# Mobile & Ohio Railroad Company v. Seales.

### *Action against Carrier for Injury to Trespasser.*

1. *Liability of carrier for intentional wrong of servant.*—A trespasser on a railroad train is entitled to recover for a wanton, wilful or intentional wrong committed by a brakeman within the scope of his employment, and in the accomplishment of objects within the line of his duties, and may have both compensatory and punitive damages embraced in the verdict.

2. *Interrogatories to defendant corporation under act of Feb. 1885, (Acts 1888-89, p. 121).*—Where answers to interrogatories to a defendant corporation are not "made by an officer. agent or servant of the corporation cognizant of the fact," as required by Act Feb. 27, 1888-89, § 1, defendant may at the trial introduce as a witness a servant who is cognizant of the fact ; and error in excluding such servant from testifying is not rendered harmless by the fact that the trial court might have rendered judgment by default against the corporation under Code, § 2820 for failing to answer the interrogatories by such servant.

3. *Pleading ; replication to plea that tortious act was without scope of servant's employment.*—Where a master, in an action against him for the wanton, wilful, or intentional tort of his servant, pleaded that the act was not within the scope of the servant's employment, a replication to such plea is demurrable which does not allege that the act was within the scope of the servant's employment.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JAMES T. JONES.

The complaint, as amended, was in the following language : "The plaintiff claims of the defendant the sum of fifty thousand dollars, ($50,000,) for that heretofore, on, to-wit, the 17th day of February, 1892, the defendant, being then and there a corporation doing business as a railroad company, did operate a certain train of cars along a railroad track in the county of Mobile, State of Alabama, and the plaintiff avers that, while he was upon a truck of one of the cars composing said train, the defendant, or one of its servants or employes (whose name is unknown, and which he has diligently inquired for from the defendant) upon said train, did wilfully, recklessly, or wantonly, fire a pistol at him, or did cause or allow a pistol to be fired at the plaintiff, so as to cause him to fall beneath the said train, and to be run over, and thereby crushed, so that it became necessary, by reason of his said injuries, to amputate both of his legs; and plaintiff avers that by reason of said injuries he has

been permanently disabled for work, and that he has been put to much expense in and about his said cure, and to great suffering, both of body and mind, all to his great damage, to-wit, the sum of fifty thousand dollars, ($50,000,) wherefore he sues." To this complaint the defendant pleaded the general issue and two special pleas, numbered 2 and 3. The third plea was stricken out, by motion of the plaintiff, as unnecessarily prolix, irrelevant, and frivolous. The second plea was in the following language: "(2) And the defendant, for further plea in this behalf, says, *actio non*, because he says that the firing of said pistol at the plaintiff by its said agents and servants, while plaintiff was riding on a truck of a coach or car of the defendant, did not pertain to the business of the defendant, and was not done within the scope or range of the authority conferred by the defendant upon its said agents and servants in its service or employ. And defendant further avers that its said agents and servants had no express orders from it to fire said pistol at the plaintiff, and neither has the defendant ratified the same. All of which this defendant is ready and willing to verify," &c. After the demurrers to this second plea were overruled, the plaintiff filed several replications, the fourth and sixth being as follows: "(4) For further reply to each plea by the defendant pleaded, the plaintiff, by leave of the court first had, says that the person who fired said pistol at him was the brakeman upon the train of the defendant upon which the plaintiff then was." "(6) For further reply to each of said several pleas, plaintiff says that the person who fired at the plaintiff was an employe of the defendant, and acted *bona fide* in the preservation and furtherance of the defendant's interest." To the fourth replication, the defendant demurred upon the following grounds: First, because the facts alleged therein did not present a legal defense to the matters alleged in said pleas; and, second, because there was no allegation in said replication that the brakeman was acting within the capacity or range of his authority, in firing a pistol at the plaintiff. To the sixth replication the defendant demurred on the following grounds: (1) Because the *bona fides* or intention of the alleged employe of the defendant has no legal influence upon the question of defendant's liability; (2) because the mere intention with which the act was done by the alleged employe of the defendant does not render defendant liable in this action; (3) because said sixth replication fails to aver that said alleged employe of the defendant, in firing at the plaintiff, was acting within the

24

scope or range of the authority conferred upon him by the defendant. The demurrers to these replications were each overruled, and the rulings thereon constitute the basis of some of the assignments of error on this appeal.

So far as is material to the consideration of the questions presented by this record, the testimony was substantially as follows: The plaintiff was a trespasser riding upon the trucks of one of the cars of the defendant, which left Whistler, Ala., on the night of the injury. Thomas Boltz was a brakeman on this train, and was instructed by the conductor to put the plaintiff off of the train, whereupon he took a pistol, and went to the side of the car, and waited until the movement of the train brought the plaintiff close to where he was standing, and then fired the pistol. The plaintiff and one witness testified that this brakeman, Thomas Boltz, pointed the pistol directly at the plaintiff, and fired; and the plaintiff further testified that he was shot by said Boltz, which caused him to fall from the trucks. On the other hand, one Humphries, a witness for the defendant, testified that, at the time the pistol was fired, it was pointed towards the ground. Instantly upon the firing of the pistol, the plaintiff fell from the trucks, under the cars, was run over, and both legs were so mangled and mashed that they had to be amputated. The physician who attended the plaintiff testified that plaintiff's legs were so mutilated that he could not tell by examination whether the plaintiff was shot or not.

Prior to the trial, the plaintiff propounded certain interrogatories to the defendant, which were headed as follows: "Interrogatories propounded by the plaintiff in the above entitled cause to the defendant, which the defendant is required to answer under section 2816, and under the act of the general assembly, approved February 27, 1889." The act approved February 27, 1889, was in the following language: "Section 1. Be it enacted by the general assembly of Alabama, That whenever interrogatories shall be propounded to a corporation, under the provisions of section 2816 of the Code, the answer thereto shall be made by such officer, agent or servant of the corporation as shall be cognizant of the fact." The interrogatories propounded by the plaintiff sought to discover the name of the person who fired the pistol in question, and in what capacity he was employed. The defendant answered these interrogatories by one Swetman, who was the conductor on the train which injured the plaintiff, and he simply testified that he did not know anything in regard to the firing of the pistol. The plaintiff propounded additional interrogatories under the same section

and act, and, from the answers to these interrogatories by the said Swetman, it appeared that Thomas Boltz was at the time in the employment of the company, and that he had continued in the employment of the company from the time of the accident up to the time of the trial. Under such circumstances, the witness, Thomas Boltz, who was the same person who had actually fired the pistol, and who knew the facts, and who was in the employment of the company at the time the interrogatories were propounded and answered, was called as a witness upon the trial. The plaintiff's counsel objected to the examination of witness, Thomas Boltz, upon the ground that the evidence showed that he was a servant or agent of the defendant, and the defendant had failed to answer the interrogatories propounded to it through said servant Boltz. The court sustained this objection, and the defendant excepted thereto.

Among other things, in its general charge, the court instructed the jury as follows: "Then, again, if you find from the evidence this act was wanton, or if it was reckless, or if any employe of the company fired at him, and thereby he fell off and was run over; that if it was done wantonly, recklessly, or willfully,—you can look to that, in giving what is called 'punitive' or 'vindictive' damages. I cannot tell you any rule to go by, about that. It is for you, entirely. You can look to the pain and the agony the man suffered from the injury. You have a right to look to his anguish of mind, and these different things growing out of this, not included in the actual damages; and it is for you, entirely, to say what you will give, not to exceed the amount sued for." The defendant duly excepted to this portion of the court's general charge to the jury.

E. L. RUSSELL and B. B. BONE, for the appellant.—1. The court erred in overruling the demurrer of the defendant to the fourth replication filed by the plaintiff to the defendant's second plea. In the case of *Alabama Great So. R. R. Co. v. Frazier*, 93 Ala. 45, relied on by appellee, this court but asserted the familiar doctrine, that a brakeman is subject to the orders of his superior officer, the conductor of the train, and that it was his duty to obey him and eject persons whom the conductor had previously decided should be put off. the train, and did not decide that it was common knowledge that the brakeman had the right to decide who should or should not remain on trains and to eject persons in accordance with his judgment.— *Gilliam v. S. and N. R. R. Co.*, 70 Ala. 268; *Central R. R. and Banking Co. v. Smith*, 76 Ala. 584; *Lilley v.*

*Fletcher*, 81 Ala. 235 ; *Ga. Pacific R. R. Co. v. Propst*, 83 Ala. 526 ; *Ala. Great Southern R. R. Co. v. Frazier*, 93 Ala. 45. If plaintiff's fourth replication to the defendant's second plea constituted a defense to the matters alleged in said plea then under the averments of said replication plaintiff could recover by proving that the person who fired the pistol was a brakeman on defendant's train without reference to whether or not the brakeman acted within the scope of his authority in the defendant's service. The defendant was bound to demur to the replication in order to prevent introduction of evidence under an insufficient and immaterial issue.—*McKinnon v. Lessly*, 89 Ala. 626 ; *Allison v. Little*, 93 Ala. 153. 2. The demurrers of the defendant to plaintiff's sixth replication to defendant's second plea should have been sustained. The intention whether *bona fide* or not, with which an act is done by a servant is not the proper or legal test of the liability of a master. When the act of a servant is not within the scope of authority conferred by the master it is the act of the servant, and the master cannot be held liable because it was done while in his employment and for his benefit.—Wood on Master and Servant (2nd ed.), p. 539; *Satterlee v. Groat*, 1 Wend. 273 ; *Campbell v. Staiert*, 2 Murph. (Tenn.) 389; *Bard v. Yohn*, 26 Pa. St. 482; *Steele v. Smith*, 3 E. D. Smith (N. Y.) 321. 3. The Code, §§ 2816 to 2812, inclusive, and Acts 1888-89, p. 121, prescribe how interrogatories by plaintiff to the defendant at law shall be propounded and answered and prescribe what remedies the plaintiff has for defendants failure to answer fully and, perhaps, when under the Act February 27, 1887, answer is not made by the proper person. The plaintiff availed himself of none of these remedies, made no objection to the answers of the defendant to his interrogatories and introduced the answers thereto in evidence. The action of the court in excluding the witness, Boltz, on the defendant's motion, is not authorized by the statute and the court had no power to extend or add to, the terms of the statute.—*Allen v. Lathrop-Hatton Lumber Co.*, 90 Ala. 492. 4. It appearing from the facts in the record that plaintiff voluntarily placed himself in a position of great peril (upon the truck of a passenger car,) to steal a ride, compensatory damages only should be allowed; to award punitive damages would be putting a prize upon such reckless conduct. There being no evidence tending to show that the defendant ever authorized the wrongful and wilful act of its brakeman, the principle announced in *Cleghorn v. New York, &c. R. R. Co.* 56 N. Y. 47 should govern.—*Lake Shore & M. S. R. Co.*

[Mobile & Ohio R. R. Co. v. Seales.]

*v. Prentice*, 13 Sup. Court Repr. p. 259; *Burns v. Campbell*, 71 Ala. 292; *Turner v. North Beach &c. R. R. Co.* 37 Cal. 549; *Kline v. Cent. Pac. R. R. Co. id.* 400; *Ackerson v. Erie R. R. Co.* 32 N. J. L. 254; *McKeon v. Citizens R. R. Co.* 42 Mo. 79; *Louisville &c. R. R. Co. v. Smith*, 2 Duval '556; *Hill v. New Orleans R. R. Co.* 11 La. Ann. 292; The Amiable Nancy, 3 Wheat 546.

GREGORY L. SMITH, H. T. SMITH and THOS. H. SMITH . for the appellee.—The record shows that the defendant had full benefit under the general issue of his contention that the brakeman of the train was not authorized to eject the plaintiff from the train. Furthermore the undisputed evidence established the fact that the brakeman was both authorized and instructed by the conductor to eject the plaintiff, so that had the replication gone further and alleged that the brakeman was so authorized to eject the plaintiff at the time of firing the pistol, or had the demurrer to the replication driven the plaintiff to take issue upon the plea, the plaintiff would have been entitled to the affirmative charge on this subject. The testimony upon this subject being without conflict, the court would have instructed the jury that the brakeman was authorized, and was acting within the scope of his authority, and for this reason the defendant could not have been injured by the ruling of the court on the demurrer of defendant to plaintiff's 4th replication to defendant's second plea. The court judicially knows that it is the duty of a brakeman to eject trespassers from the railroad cars upon which he is a brakeman and that in doing so he acts within the scope of his authority. It is not necessary, therefore, to allege that which the court judicially knows, and which it is not, therefore, necessary to prove. —*Ala. Great South. R. R. Co. v. Frazier* 93 Ala. 45; Patterson's Railway Acc. Law §§ 108-110. As to the action of the court in overruling the demurrer of defendant to plaintiff's sixth replication to defendant's plea, the proper test of authority is not whether the servant was expressly authorized to act but whether he acted in his own individual interest or *bona fide* in the preservation of his master's interests. In the former case the master is not liable, and in the latter he is liable for the act of the servant although beyond his express authority.—*Water Works v. Hubbard*, 85 Ala. 182; *Ala. Great So. R. R. Co. v. Frazier*, 93 Ala. 45. The object of the statute (Feby. 27, 1889) and the amendment thereto relating to interrogatories to parties is to enable the party propounding the interrogatories to obtain the desired dis-

covery and to prevent a corporation party from avoiding this result by answering the interrogatories by some person not cognizant of the facts. *Ex parte C. S. & S. R. R. Co.* 78 Ala. 259. Defendant undertook to defeat this purpose by answering the interrogatories propounded to it by a witness not cognizant of the facts, notwithstanding the fact that the witness who was informed of the circumstances inquired about was then in its employment. The power vested in the court by code § 2816 to enter a judgment by default for the failure of defendant to answer the interrogatories by the proper person included the power to exclude the witness who should have answered the interrogatories and whose testimony the plaintiff had the right to obtain in advance of the trial, but of which right he was deprived by the defendant. It was in the power of the court to prevent the defendant from profiting by its own wrong. Furthermore the court, having the power to grant a judgment by default in such a case, its ruling if error was without injury just as an error is without injury where the party in whose favor error is committed is entitled to the general charge.—*Lane v. Jonas* 79 Ala. 156; *Seymour v. Farquaher,* 93 Ala. 292, *Smith & Co. v. Railroad,* 91 Ala. 455.

McCLELLAN, J.—Railway corporations have time and time again been held responsible by this court for injuries to passengers, employes and strangers, resulting from or inflicted through the wantonness or wilfulness of servants not above the grade of brakemen and flagmen. In many instances recoveries on account of the wilfulness or wantonness of such employes have been had at the suit of persons who were themselves guilty of causal contributory negligence, and the judgments have been sustained here. In not a few instances, all this is true in respect of injuries thus caused to and suffered by pure trespassers. Not only so, but in both classes of cases recoveries have frequently been allowed in *nisi prius* courts and sustained here where punitive and exemplary as well as actual and compensatory damages have been awarded on account of the wantonness, wilfulness and the like of this class of employes; and in at least one case the question was distinctly made in the form it is now presented and expressly decided.—*Ala. Gt. So. R. R. Co. v. Frazier,* 93 Ala. 45. The right of trespassers and contributorily negligent persons to recover for the wanton, wilful or intentional wrongs of brakemen, flagmen and other employes of similar grade—committed, of course, within the scope of their employment and in the accomplishment of

objects within the line of their duties—and to have the jury embrace in the verdict both compensatory and punitive damages, if they see fit to do so, is no longer open to question in this State. We are not disposed to reopen it; and if it were a new question with us, we should be much more inclined to the conclusion at which this court has arrived than the view taken by some courts of marked ability, namely, that while corporations cannot be mulct in punitive damages for the wilfulness of such inferior employes as trainmen, they are responsible in such damages for the wilful misconduct of such general executive officers as their presidents, general managers, &c. We do not conceive that there is any sound reason for the distinction. The president of a railway corporation is no more or less its agent than a brakeman on one of its trains. His agency is broader but it is not boundless, and a matter which lies beyond its limits is as thoroughly beyond his powers as any matter beyond the very much smaller circle of a brakeman's duties; and, *e converso*, a brakeman is as fully authorized to act for the company within the range of his employment as the president is within the limits of his office. It can no more be said that the corporation has impliedly authorized or sanctioned the wilful wrong of its president in the accomplishment of some end within his authority than that a similar wrong by a brakeman to an authorized end is the wrong of the corporate entity. There is just the same and no more reason in our opinion, for inflicting punishment on the corporation for the wilful misconduct of the one as of the other, and such punishment is no more vicarious in the one case than in the other. That punishment may be imposed on corporations for the wilful or wanton misconduct, within the general scope of their duties, of their chief executive officers, is well established and not questioned in this case. We feel that we stand upon the same principles and are moved by the same considerations to the same conclusion in respect of the wilfulness, wantonness and the like of brakeman and flagmen while acting within the scope of their employment and to the accomplishment of the legitimate ends thereof. On the facts of this case, the trial court properly submitted it to the jury to determine whether, and, if any, what, exemplary damages should be assessed against the defendant.

The court erred, we think, in refusing to allow the defendant to introduce and examine Boltz as a witness. It was clearly defendant's duty to have answered the interrogatories propounded to it by the plaintiff by this man Boltz,

as he was its officer, agent or servant who knew the facts inquired about under Section 2816 of the Code as amended by the Act of 1889—Acts 1888-9, p. 121. Having failed in this duty and answered by another agent or servant who was not cognizant of the facts, the trial court was authorized to either attach the defendant and cause its answer by the proper servant to be made in open court, to continue the cause until the answers were made as required by the statute or to direct a judgment by default against the defendant. Code § 2820. But there is no authorization in the statute for the exclusion of the officer, agent or servant by whom the answers should have been made when offered as a witness by the recalcitrant party; and, the whole proceeding being statutory, we must look alone to the terms of the statute for justification of any action taken under it. It is said, however, that the defendant was not prejudiced by the action under consideration and that reversal should not, therefore, be had upon it, since the court might have directed a judgment by default, &c., &c. The question here is not what the court might have done but what it did. It was discretionary with the trial judge to enter a judgment by default, and we can not know that such judgment would have been entered but for the court's assumption and attempted exercise of the supposed right to exclude this witness. We can not know, to put it differently, that, but for this action an equally or more injurious thing would have happened to the defendant. Indeed it can not be said even that a judgment by default would have been as prejudicial to the defendant as the exclusion of this witness, because upon the rendition of such judgment it would have been defendant's right to go to the jury on the merit of inquiry, and it may well be the testimony of this witness, bearing upon the assessment of damages, would have been of greater benefit to the company than the omission of the court to direct a judgment by default. The action was erroneous and injurious and must operate a reversal of the judgment.

Considered abstractly, plaintiff's fourth and sixth replications to defendant's second plea were bad in that they did not aver that the person who fired the pistol was a brakeman, &c., and acting within the scope of his employment, &c., &c. Whether the rulings of the court on defendant's demurrers to these replications involve injury to the defendant we need not decide.

Reversed and remanded.