## Chicago R. I. & P. Ry. Co. v. Frederick Brackman, etc.

1. MASTER AND SERVANT—*The Master Not Liable for the Wrongful Acts of the Servant.*—The master is not liable for the wrongful acts of his servant which he has not expressly directed, unless such acts are within the scope of the servant's employment.

2. RAILROADS—*Authority of a Freight Brakeman to Eject Trespassers.*—A freight train brakeman has no implied authority to eject trespassers from the train upon which he is brakeman, where no such express authority had been given him to do so, and where there is a conductor in charge of the train who has such express authority.

3. SAME—*As Carriers of Passengers, Duty, etc.*—A carrier of passengers is bound to exercise the highest degree of care to secure the safety of passengers, and is responsible for neglect resulting in an injury to a passenger; and this care applies to the selection of competent and faithful servants, and the faithful performance by them of their duties; the maintenance of such order and discipline among them as is requisite for the security of passengers; and such carrier is bound to protect passengers against the violence of its own servants.

4. SAME—*Implied Authority of Freight Brakeman.*—A freight brakeman has no implied authority to remove trespassers from freight cars by virtue of the mere fact that he is employed as a brakeman, and a trespasser who sues for injuries received while being ejected by a brakeman must show, in order to recover, that such brakeman had authority to do the act which caused the injury, beyond that arising from the mere fact that he was employed to act as a brakeman.

5. SAME—*Duty of Conductor and Brakeman.—Liability for the Acts*

*of a Brakeman.*—The conductor of a train, being in charge of and having full control over it, represents the company as to all matters connected with its management and control, and for a wrongful act done by him in the line of his duty, the company will be liable; but for the act of a brakeman, who, without the direction of the conductor, ejects a trespasser from the train, the company will not be liable, unless express authority to do the act itself, or an act to which such act is incident, is shown; such an act is not one which comes within the line of his duty.

6.  SAME—*Responsibility for the Acts of Its Employes.*—Where an employe does an act which he is not employed to do, the company can not be said to do it by its employe, and is therefore not responsible for it.

7.  SAME—*Burden of Showing Want of Authority in a Brakeman.*— The burden rests upon the injured trespasser to show that the brakeman in ejecting him from the train and inflicting the injury complained of possessed the authority to do the act resulting in such injury.

8.  SAME—*Brakeman's Authority Not to Be Implied.*—The authority of a freight brakeman to eject trespassers from trains will not be implied from the general nature of his employment.

9.  SAME—*When Not Liable for the Acts of a Brakeman.*—The mere fact that a person has been injured by the tortious act of a brakeman in the employ of a railroad company can not render it liable unless the act complained of pertains to the principal duty of the brakeman, and is within the scope of his employment.

10.  SAME—*Implied Authority of Freight Train Brakeman.*—A freight train brakeman has no implied authority to eject trespassers, and in the absence of express authority his employer is not liable for his acts in forcing a trespasser from its train.

11.  WORDS AND PHRASES—*What the Word "Brakeman" Implies.*— The word "brakeman" implies that it is his principal duty to attend to the brakes, and it is not to be inferred that he has control over the train or any particular car or set of cars.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the May term, 1898. Reversed with a statement of facts. Opinion filed September 26, 1898.

ROBERT MATHER, W. T. RANKIN, LINCOLN & STEAD and EDGAR ELDREDGE, attorneys for appellant.

The mere fact that a tortious act is committed by a servant, while he is actually engaged in the performance of a service he has been employed to render, can not make the master liable; something more is required. It must not

only be done while so employed, but it must pertain to the particular duties of that employment. Keith v. Lynch, 19 Ill. App. 579; Callahan v. Hyland, 59 Ill. App. 351; Chicago, R. I. & P. Ry. Co. v. Koehler, 47 Ill. App. 147; Chicago & A. R. R. Co. v. Michie, 83 Ill. 427; Penn. R. R. Co. v. Dean, 92 Ind. 459; Everhart v. Terre Haute Ry. Co., 78 Ind. 292; Golden v. Newbrand, 52 Iowa, 59; Wright v. Wilcox, 19 Wend. (N. Y.) 343; Mali v. Lord, 39 N. Y. 381; Fraser v. Freeman, 43 N. Y. 566; Miami R. R. Co. v. Wetmore, 19 Ohio St. 110.

HASKINS & PANNECK and VINCENT J. DUNCAN, attorneys for appellee, contended that a freight train brakeman has implied authority to eject trespassers from the cars of the train. Brevig v. C., St. P., M. & O. Ry. Co. (Minn.), 66 N. W. Rep. 401; Chicago, M. & St. P. Ry. Co. v. Doherty, 53 Ill. App. 282; Hoffman v. N. Y. C. R. R. Co., 87 N. Y. 25; Memphis & N. O. R. R. Co. v. Seals (Ala.), 13 So. 917; St. Louis, A. & T. H. R. Co. v. Reagan, 52 Ill. App. 489; Carter v. Railway Co., 98 Ind. 562; Railway Co. v. McKee, 99 Ind. 521; Chicago, M. & St. P. Ry. Co. v. West, 125 Ill. 320; Ramsden v. Railway Co., 104 Mass. 117.

Nothing is more common than for the courts to take notice of the powers and duties of agents and employes of railway companies where common observation and experience furnish knowledge of what they are. Chicago, M. & St. P. R. Co. v. Doherty, 53 Ill. App. 282.

A railway company has no right to forcibly eject a person from its train while in motion, because he is a trespasser thereon, and if such ejection is made in a wanton and willful manner the company will be liable in exemplary damages. In such cases it is immaterial whether the relation of carrier and passenger does or does not exist. St. Louis, A. & T. H. R. Co. v. Reagan, 52 Ill. App. 489, and authorities there cited.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This is an action brought by Frederick Brackman against

the Chicago, Rock Island & Pacific Railway Company to recover damages for the crushing of his ankle by the wheels of a freight car of said railway company. Upon issues joined there was a jury trial, and a verdict and a judgment for Brackman for $5,000, from which judgment this appeal is prosecuted.

On March 21, 1895, Brackman, then between seventeen and eighteen years of age, entered an empty stock car in a west-bound freight train of the railway company at Peru, for the purpose of stealing a ride to Bureau Junction or Davenport. He had several companions with him who were there for a similar purpose. One mile west of the Peru depot on said railway, was the crossing of the Illinois Valley & Northern Railroad, and about a quarter of a mile west of that was a pile of ties on the north side of the track. When the train reached the place where the ties were, Brackman got off the train, which was then going at a speed varying according to the estimate of different witnesses from seven to thirty miles per hour. Apparently Brackman struck the ties, and they turned him toward the train. His foot went under the wheel and his ankle was crushed, and amputation became necessary. Brackman claims that John Gaynor, head brakeman of said train, twice came to a door in the end of said stock car and in a violent manner ordered the boys to get out of the train, and two of them jumped off; that he came the third time and got into the car and again ordered the boys out; that Brackman then got upon the outside of the car, and was holding on by his fingers to the slats or pieces of wood forming the sides of the car, and that Gaynor struck Brackman's fingers with a stick and compelled him to release his hold upon the car, and he fell and received the injuries stated. The defense claims, and Gaynor so testified, that he did not order the boys out of the car; that he did not have a stick in his hand, and that he did not strike Brackman, but that Brackman and the other boys who did get off did so of their own accord because they had been told that an officer of the railroad company who had threatened to arrest them at Peru was on the

train looking for them.   Brackman and some of his wit-
nesses signed written statements soon after the accident
upon material questions in the case quite at variance
with their testimony, including the following statement by
Brackman:  " When the brakeman came down the car he
had a brake stick in his hand and I thought he was going to
strike me, and I jumped off.   He struck at me but he did
not hit me, as I got out of the way."   Brackman testified
this was written contrary to the oral statement he had
made.   Brackman and his witnesses also contradicted each
other on various points, and their description of the car
proved to be incorrect in important respects.   We have
examined the evidence upon the merits of the case suffi-
ciently to see that it is a serious question whether the evi-
dence will sustain the verdict of the jury upon the merits,
and whether a new trial ought not for that reason to be
awarded.    Our attention, however, has been withdrawn
from that question by a consideration of the inquiry whether,
if the accident was caused by the act of the brakeman as
plaintiff's witnesses claim, the defendant is responsible there-
for.   This question was presented by an instruction offered
at the close of the evidence, the refusal of which is assigned
for error.

Plaintiff made Gaynor his own witness, and proved by
him that he was a brakeman, in the employ of defendant,
and had been since 1893; that he was brakeman on the rear
end of the train, on the day in question, from Blue Island
to Ottawa, and was head brakeman from Ottawa to Rock
Island, and was therefore head brakeman at the time
plaintiff was hurt.   The train left Peru with thirty-four
cars.   The boys were in the fourth car from the front end.
Gaynor testified that that car was under his jurisdiction as
head brakeman, by which we do not understand he meant
to define his duties with respect to said car, but only to
state that it was in that part of the train over which he
exercised the duties of brakeman at that time.   The word
" jurisdiction " was not used by the witness, but was embod-
ied in a question, to which he only answered " yes."   One

of Brackman's companions testified Gaynor told him afterward that he was very sorry; that he did not mean to hurt Brackman, but that it was his duty to keep trespassers off the train, and that that was the reason he did what he did. Gaynor denied this statement. Plaintiff offered proof as to the duties actually performed by brakemen on defendant's railroad at a certain former period, which was not admitted, but as no cross-errors are assigned, the record does not present the question whether the offered proof was competent evidence for plaintiff. We have stated all 'the evidence plaintiff introduced to prove Gaynor's duties and that defendant was responsible for his act. Gaynor testified for defendant that he was upon the top of the cars till the train reached the Illinois Valley and Northern crossing, because the rules of the defendant required brakemen to be on top of the cars when passing through stations and approaching railroad crossings; and that it was against the rules of the company for a brakeman to have a brake stick such as that with which plaintiff's witnesses testified he struck plaintiff. The conductor testified that it was no part of Gaynor's duties to eject trespassers, but that it was the conductor's duty to keep people off the train, and to eject trespassers; that if the head brakeman discovered trespassers, he had no authority to remove them without going back and asking the conductor; that Gaynor did not that day report to him that there were boys stealing a ride on that train, and that he did not then nor previously give Gaynor any order to eject trespassers from the train or compel them to leave it. He also testified he was not allowed to carry passengers on said train, which was an extra freight, and would not have been allowed to carry plaintiff thereon. The printed rules of the company were also put in evidence, and it was proved each employe of the company was furnished with a copy thereof. They showed that the general direction and government of the train was vested in the conductor; that freight brakemen were required to ride on top of the train, where they could apply brakes; that one brakeman at a time was allowed to go into the caboose

to warm himself in very bad weather, and that it was the duty of brakemen to apply brakes on signal and when approaching stations, and at stopping of trains to inspect wheels, brakes and trucks, and report defects. It also appeared, negatively, there were no rules which could be interpreted to give brakemen any authority to put or order trespassers off of trains. It is also to be borne in mind in this connection that plaintiff in getting into and riding in this car without leave, was violating section 17 of the Illinois statute relating to fencing and operating railroads.

The case for plaintiff, which the evidence tended to prove, then is, that plaintiff was a trespasser on a freight train and was, by a brakeman, forcibly and wrongfully ejected from the train while in motion, and was injured thereby; that the train was in charge of a conductor who had authority to remove trespassers; and that the brakeman had no express authority from defendant or from his superior officer to order or put or keep trespassers off the train. The master is not liable for the wrongful acts of a servant which the master has not expressly directed, unless such acts are within the scope of the servant's employment. Chicago, M. & St. P. Ry. Co. v. West, 125 Ill. 320. This rule is as necessary for the protection of an individual who employs servants as it is for a corporation. If a farmer hires a man to dig a ditch and lay a tile drain, or a quarryman hires a man to quarry stone, and the servant steps outside the business for which he is employed, and without the direction or knowledge of the master performs an unlawful act which injures a third person, as, for instance, by expelling trespassing animals or persons from the master's premises with such force as to unnecessarily injure them, it would be manifestly unjust to hold the master responsible therefor. In such an act outside his employment the servant no longer represents the master, and is not acting for him, but of his own volition. Even if the servant does the act because he thinks it will benefit the master, still if it is no part of the duty he was hired to perform he is but a volunteer, and his act ought not to bind the master. No person could safely employ

another in any business, however humble, if he was to be held responsible for all acts of the servant during the period of the employment, where the acts were not authorized and were outside the duty he was hired to perform. This would be to make the master an insurer against all acts of those whom he employs. The question presented by the evidence in this case then resolves itself into this: Has a freight train brakeman implied authority to eject trespassers from the train upon which he is brakeman, where no such express authority has been given him, and where there is a conductor in charge of the train who has such express authority?

To support an affirmative answer to this question plaintiff cited the following Illinois cases: St. L., A. & T. H. R. R. Co. v. Reagan, 52 Ill. App. 488; C., M. & St. P. Ry. Co. v. Doherty, 53 Ill. App. 282, and C., M. & St. P. Ry. Co. v. West, *supra*. In the first of these cases Reagan came upon a passenger train at a tank where the train stopped, and where the railroad company recognized the right of the traveling public to take or leave the train. Reagan got on for the purpose of riding from there to Carbondale, and testified he had the money with which to pay his fare, which was seven cents. He took a seat upon one of the steps of one of the passenger coaches. The jury and the Appellate Court found the brakeman pushed Reagan off when the train was in motion. The rights of the parties in that case were governed by principles not applicable here. The carrier of passengers is bound to exercise the highest degree of care to secure the safety of the passengers, and is responsible for the slightest neglect resulting in injury to a passenger; and this care applies to the selection of competent and faithful servants, and the faithful performance by them of their duties, and the maintenance of such order and discipline among them as is requisite for the security of the passenger; and such carrier is bound to protect passengers against the violence of its own servants. C. & A. R. R. Co. v. Byrum, 153 Ill. 131; C. & A. R. R. Co. v. Pillsbury, 123 Ill. 9; C. & E. R. R. Co. v. Flexman, 103 Ill. 546; Packet Co. v. True, 88 Ill. 608; Farber v. M. P. Ry. Co., 116

Mo. 81; Bess v. C. & O. Ry. Co., 35 W. Va. 492; Steamboat Co. v. Brockett, 121 U. S. 637. In all cases where a passenger is injured by the negligence or willful act of a servant of the carrier it is not a defense that the servant was not acting within the scope of his employment. 2 Wood's Railway Law, Sec. 316. In the Doherty case an engineer threw a piece of coal at a boy on the foot-board of his engine to compel him to get off, and hit him and knocked him off, whereby he lost a hand. The liability of the company in that case was based upon the doctrine that the engineer is in possession and control of the engine, and that such possession and control, in the absence of proof to the contrary, implies power to keep trespassers off the engine; and it was held the engineer was acting within the scope of his employment in what he did to make the boy get off the engine. In the West case an engineer put a boy off his engine in a negligent manner, and the boy was injured. A judgment in favor of the plaintiff was affirmed for the same reasons as in the Doherty case. None of these cases are based upon any principle applicable to the act of a freight brakeman in putting a trespasser off the train, when such an act was not within the scope or performance of his express duty or authority.

The principal case outside of Illinois which supports the liability of defendant is Brevig v. C., St. P., M. & O. Ry. Co., 64 Minn. 168. That case holds a brakeman on a freight train has implied authority to eject a trespasser, which can only be overcome by clear evidence that such authority had been expressly withheld or forbidden. That court relied upon two authorities. The first is Patterson's Railway Accident Law, Sec. 111, to the effect that a railway servant put in charge of property, as a conductor in charge of a train, or an engine driver in charge of an engine, or a brakeman in charge of a car, is necessarily clothed with the duty of protecting that particular property, and is therefore for that purpose vested with an implied authority to remove trespassers therefrom, and if he makes a mistake and uses unnecessary violence in removing a trespasser, the railway

must be held liable for such injuries as result from the unnecessary violence through which that removal is effected. The second is Hoffman v. R. R. Co., 87 N. Y. 25. In that case a trespasser was kicked off a passenger train, either by the conductor or a brakeman, and it was held that if it was a brakeman that act was within his implied authority.

Plaintiff also cites M. & O. R. R. Co. v. Seales, 100 Ala. 368. The statement of the evidence in that case shows the conductor had ordered the brakeman to eject the plaintiff, a trespasser riding upon one of the trucks of the train. The brakeman therefore acted by express authority, and the case was not in point. Plaintiff also cites Carter v. L., N. A. & C. Ry. Co., 98 Ind. 552, and E. & T. H. R. R. Co. v. McKee, 99 Ind. 519. The Carter case holds that servants in charge and control of and operating an engine have implied authority to remove a person wrongfully upon it. In the McKee case a detective hired to arrest persons unlawfully obstructing defendant's track, arrested an innocent person, and it was held the act was within the general line of his employment. We do not think these Indiana cases and other cases cited by plaintiff which we have not here referred to, are fairly applicable to the question under discussion. In Railroad Co. v. Kelley, 36 Kan. 655, although there was proof it was the duty of the brakeman to put trespassers off the train, the case was decided upon the ground that in the absence of a rule defining the duties of a brakeman on defendant's road, it would be presumed the removal of trespassers was within the implied authority and became the duty of the servants in charge of the train. The court then assumed, without so stating, that a brakeman was a servant in charge of the train. A dissenting opinion in Randall v. C. & G. T. Ry. Co., 71 N. W. Rep. 450 (Mich.), holds that a freight brakeman has implied authority to remove trespassers from the train. We have examined many other opinions cited in the foregoing cases, but, upon carefully considering them, those which have been thus brought to our attention do not in our judgment support

plaintiff's contention here, while some hold directly contrary thereto.

On the other hand there are numerous authorities which support the contention of defendant that a freight brakeman has no implied authority to remove trespassers from freight cars by virtue of the mere fact that he is such brakeman, and that a trespasser who sues for injuries received while being ejected by a brakeman or other subordinate employe not in charge of the train must show, in order to recover, that such employe had authority to do the act which caused the injury beyond that arising from the mere fact that he was hired to act as a brakeman.  3 Elliott on Railroads, Sec. 1255, approves that rule, and cites the authorities on both sides of the proposition.  2 Wood's Railway Law, Sec. 316, states the principle thus: "The conductor of a train being in charge of and having full control over it for the time, represents the company as to any matter connected with the management and control, and for an act done by him in the line of his duty, as by the ejection of a trespasser from the train, etc., the company would unquestionably be liable; but for the act of a brakeman of the train, who, without the direction of the conductor, should remove a trespasser from the train, the company would not be liable unless express authority to do an act to which the act complained of is incident, is shown; because the act is not one which comes within the scope or line of his duty.  In Towanda Coal Co. v. Heeman, 86 Pa. St. 418, a boy was trespassing on a coal car and the brakeman threw coal at him to compel him to get off, and hit him and caused him to fall from the car, whereby he was injured. It was held that there was no evidence in the case that the brakeman was acting in the line of his duty and within the scope of his employment, or in pursuance of any authority conferred upon him, and that there was affirmative proof to the contrary, and that in that state of the proof the court should not have submitted to the jury the question whether the wrongful act was the exercise of a duly delegated authority.  It was there said that where the servant does

something which he is not employed to do at all, the master
can not be said to do it by his servant, and therefore is not
responsible. In Randall v. O. & G. T. Ry. Co. (Mich.), *supra*,
plaintiff sued to recover damages for injuries sustained by
him as a trespasser while being compelled by a brakeman
to jump from a freight train in motion. It was held that
the burden was upon the plaintiff to show that the brake-
man had authority from the company to do the act com-
plained of, and that there was no such proof in that case.
In L. S. & M. S. Ry. Co. v. Peterson, 144 Ind. 214, where
the plaintiff was a trespasser upon a train, and the brake-
man ordered him off, and when he refused to get off pur-
sued him with a weapon and frightened him, and compelled
him to get off, whereby he was injured, the court said :
" We take the rule to be free from doubt that the burden
rests upon the injured trespasser to show that the brake-
man inflicting the injury possessed the authority to do the
act resulting in the injury.". Upon petition for rehearing,
that court further held that authority in a freight brake-
man to eject trespassers from the train will not be implied
from the general nature of his employment. In Marion v.
C., R. I. & P. Ry. Co., 59 Iowa, 428, the plaintiff had been
a trespasser on a moving freight train, and had been forced
off it while in motion and caused to fall through a bridge,
whereby he received injuries. It was held that under the
evidence in that case, if the conductor had forced the plaint-
iff from the train while in motion the act would have been
deemed to be in the course of his employment and of his
duty to remove trespassers from the train; but the court
said : " The act of an employe of a railroad company in
removing a trespasser from a train can not be considered
the act of the company, unless he was engaged generally
to remove trespassers, or specially to remove the particular
trespasser. The court below appears to have thought other-
wise. The instruction given proceeds upon the theory that
where a person is employed to do one thing, and he volun-
teers to do another, his act shall, nevertheless, be deemed
to be within the scope of his employment, if his purpose

was to serve his employer. But, in our opinion, the purpose of the employe is not, in a case like the one at bar, material. The court, we think, was misled by a distinction which has been drawn by courts in a different class of cases. * * * Where the employe is not acting within the course of his employment the employer is not liable even for the employe's negligence, and the mere purpose of the employe to serve his employer has no tendency to bring the act within the course of his employment." In Farber v. M. P. Ry. Co., 116 Mo. 81, the plaintiff was a trespasser on a freight train, and the brakeman stepped on his fingers to compel him to get off while the train was in motion, and he fell and was injured. It was there held: " There is no reason for assuming, in the absence of proof, that the brakeman on a freight train has been clothed with the power to remove persons who shall endeavor to take passage on the train. It was not to be presumed that any one would violate the law and attempt to ride, in the first place, and hence require his services for such purposes; nor that this subordinate would be so invested when he had a superior present in the person of the conductor, upon whom such duties usually devolve. * * * The mere fact that the plaintiff was injured by the tortious act of the brakeman while he was in the employ of defendant can not render defendant liable. The wrong perpetrated must pertain to the principal duty of the brakeman; in other words, the act must be within the scope of his employment, and this the evidence failed to show. In A. G. S. Ry. Co. v. Harris, 71 Miss. 74, the plaintiff was a boy who had been stealing a ride under the cars, and had come upon the platform of a moving passenger car and was kicked off by the porter and was injured. The court there said: " Is a railway company unlike all other things, unlike all other masters, to be held to accountability for the wanton and willful misconduct of its servants done outside of the line of their employment and their duty, and in no way connected therewith, and that, too, to strangers—trespassers it may be? Shall the railway company be made liable for such acts, done perchance by a disobedient servant, and in

disregard of his duty to his master? We adhere to the reasonable and just rule of affixing legal liability where the master is shown to be responsible for his servant's act, done in the discharge of his duty within the scope of his employment; and this rule is of force in the case at bar, where the carrier was under no contractual obligation to carry safely." In I. & G. M. R. R. Co. v. Anderson, 82 Texas, 516, a brakeman was alleged to have struck a trespasser stealing a ride on a freight train, and forced him to fall under the wheels. There was proof brakemen on defendant's road had been seen putting off and keeping off trespassers, and other proof that that was solely the conductor's duty unless he authorized a brakeman to do it. The court there said : "We fail to see that any necessity exists for conferring authority upon a brakeman to eject trespassers from cars. The conductor has this power, and, it is to be presumed, power also to call to his aid the other servants of the company upon the train. The name 'brakeman' would imply that it is the principal duty of that servant to attend to the brakes, and it is not to be inferred that he has control over the train or any particular car or set of cars. Accordingly we find it distinctly held that a brakeman has no implied authority to eject trespassers from the cars. We have found no case which, when carefully analyzed, justifies a holding that a brakeman has such implied authority." In Texas & Pac. Ry. Co. v. Moody, 23 S. W. Rep. 41, the Court of Civil Appeals of Texas said : "In order to make the defendant liable for the wrong done the deceased by the brakeman in kicking him off the train, it was necessary for plaintiff to show that it was within the general scope of his authority to eject trespassers from its train." In Texas Pacific Ry. Co. v. Hayden, 26 S. W. Rep. 331, where a boy was ordered by a brakeman to jump off a freight train, and on his failure to do so the brakeman threw a piece of coal at him and struck him, knocking him off, and the wheels ran over his foot, necessitating amputation, the same court said : "The burden was upon the plaintiff to prove the facts which would entitle him to recover; the law does not under-

take to fix or declare the duties of brakemen, and it raises no presumption as to such duties." In Bess v. C. & O. Ry. Co., 35 W. Va. 492, where a boy trespassing on a freight train was ejected by some employe of the railway company who kicked his hand and caused him to fall and he was injured, the court held that plaintiff, in order to recover, was required to prove that the wrong was done, not simply by an employe, but by one acting in the course of his business within the scope of his authority in the act in question. In Corcoran v. C. & M. R. R. Co., 56 Fed. Rep. 1014, U. S. Circuit Court of Appeals, first circuit, in a case from Massachusetts, plaintiff proved that he was riding on top of a freight car without having paid his fare, and was ordered to get off by a person carrying a lantern, whom he supposed to be a brakeman, and replied that he would get off if the train were stopped, and thereupon the supposed brakeman seized him and threw him off while the train was in motion and he was injured. The court held that the plaintiff should have offered evidence showing the scope of the alleged brakeman's authority, and for lack thereof the judgment of the lower court against him was affirmed.

The decisions of our own Supreme Court seem to us not in conflict with this doctrine. In C., M. & St. P. Ry. Co. v. West, *supra*, it was held that when the engineer invited the boy to ride on the engine with him, he acted without the scope of any duty he owed his employer, and that if any injury had come to the boy on account of that act of the engineer, whether negligently done or not, the master would not have been liable, because the engineer had no authority to invite any one to ride on the engine with him. The liability of the company was there sustained because it was the duty of the engineer to put and keep strangers off his engine, and the boy was hurt while the engineer was compelling him to get off, in the performance of that duty. This is in harmony with C. & A. R. R. Co. v. Michie, 83 Ill. 427, where the company was held not responsible for the results of the unauthorized act of the engineer in inviting a person to ride upon his engine. The liability of the

company in N. W. R. R. Co. v. Hack, 66 Ill. 238, was sustained upon the express ground that the servant who kicked the hand of deceased and compelled him to fall from the car was then in charge of the car, and the proof showed it was his duty to require persons to leave the car and to prevent their remaining thereon; and that he was discharging his duty in the act in question, and the company was therefore responsible for the willful and wanton manner in which he discharged it. In C., R. I. & P. Ry. Co. v. Koehler, 47 Ill. App. 147, this court held that directions given by a station agent to a passenger to get on a moving train were not within the implied or apparent scope of his power and authority, and there being no claim the company had given him any such express authority, the company was not liable for the injury the passenger received from obeying the instructions of the station agent. Keith v. Lynch, 19 Ill. App. 574; Callahan v. Hyland, 59 Ill. App. 347.

If a clerk or a ticket agent or a baggage master had done the act here complained of, we think it would not be claimed the company would be liable for the result. It is true this brakeman had a right to be upon the train, and in the discharge of his duty might have occasion to be upon all parts of it, but he was there as a brakeman to set brakes on signal and when approaching stations, to couple cars in making up the train, and in leaving and taking on cars at stations, and generally to perform the duties which are recognized as belonging to the position of a brakeman on a freight train, and he was not there to manage or control the train. He was subordinate to the conductor. His duty was to report to the conductor any defects he discovered in the machinery of the train, and the presence of trespassers thereon, and the conductor alone was given authority to decide what should be done. If a servant with such limited duties can, by a willful and wanton act outside the line of service he was hired to perform, impose a liability upon his master in favor of a mere trespasser, then the rule that the master is only liable for the acts of his servant which he

expressly directed, or which have been done in the line of the servant's duty and within the scope of his employment, must, as it seems to us, be considered as abandoned. We have reached the conclusion that the prevailing rule, and the one supported by the greater weight of authority and by the better and stronger reasons, is that a freight train brakeman has no implied authority to eject passengers. The proof in this case did not show any such express authority, but on the contrary showed that it did not exist. In the absence of express authority, we are of opinion that defendant was not liable for the act of its brakeman in forcing Brackman off the train, if the brakeman did so. Therefore it is not necessary we should pass upon the weight of the testimony bearing upon the question whether the brakeman did in fact strike Brackman's fingers and force him to fall or jump from the train. For the reasons stated the judgment will be reversed.

### Finding of Facts.

Finding of facts to be incorporated in the judgment :

We find as matter of fact that the plaintiff was a trespasser stealing a ride upon the freight train of defendant, without any right to do so; that he fell or jumped from said train while in motion, and his foot was thrown under the wheel and crushed, and he thereby received the injury complained of in this case; that the testimony offered for the plaintiff tends to show that the head brakeman of said train came into the empty stock car where the plaintiff was and ordered him out of the train, and that plaintiff stepped out of the side door of said car, and held on to the side of the train by his hands, holding on to the slats composing the side of the stock car, and that said brakeman struck his fingers with a stick, and thereby either made him fall or compelled him to jump from said train. We find that the evidence introduced by the defendant tends to show that the brakeman did not order plaintiff out of the train and did not strike his fingers and had no stick with which he could have struck him. We further find as a matter of

fact that the brakeman had no express authority to eject trespassers from said train or to compel them to leave it, and no implied authority concerning trespassers except that, if any which may be implied, from his being employed as a brakeman, and that the conductor had express authority to remove trespassers; and that the brakeman did not injure plaintiff while acting within the scope of his employment; and we hold, as a matter of law, that the brakeman had no implied authority to remove trespassers merely from the fact that he was a brakeman upon said train; and for want of proof of such authority in the brakeman, we find that defendant is not liable for the alleged act of the brakeman, and that plaintiff has no cause of action.