Leonard Swanbeck, Administrator of Estate of Charles Swanbeck, Deceased, Appellee, v. Harry Hubbard et al., Appellants.

Term No. 48025.

Opinion filed February 3, 1949.
Released for publication March 1, 1949.

GORDON BURROUGHS, of Edwardsville, and CRAIG · & CRAIG, by H. W. CAMPBELL and J. E. HORSLEY, all of Mattoon, for appellants; J. H. ANDERSON, of Mattoon, of counsel.

PHILIP G. LISTEMAN, RALPH D. WALKER and LLOYD MIDDLETON, all of East St. Louis, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

The plaintiff brought this suit under the Injuries Act of this State for the alleged wrongful death of Charles Swanbeck, a six-year-old child, which occurred on March 14, 1945, when he was run over by a truck operated by one Loren Cuthrell, alleged to have been the agent and servant of defendants, and acting within the scope of his employment for them at the time.

From a judgment against defendants, they appeal and contend the trial court erred in rulings on evidence, in the instructions, and in rulings on motions for judgment notwithstanding the verdict; that Cuthrell was not their agent or servant at the time; that no negligence on the part of Loren Cuthrell was established; that proof of freedom from contributory negligence is absent; that by answer to a special inter-

rogatory, the jury found deceased's next of kin "negligent in permitting said deceased to play in the street around the truck of the driver, L. R. Cuthrell" yet returned a general verdict against defendants for $8,500.

In our opinion, several of the points raised by appellants are well taken, but we shall discuss only one, since it is decisive, and requires reversal of the judgment.

It was the theory of the plaintiff that the defendants were operators of a certain oil leasehold, upon which there were several wells being pumped; that one of the pumps was defective and not operating for some unknown or unstated reason; that Loren Cuthrell was an employee of defendants; that it was within the scope of his employment to have this pump restored to operation; that while he was driving his truck upon an errand for the purpose of performing this duty, he negligently caused the death of the deceased.

Plaintiff's evidence that Cuthrell was an employee of defendants is based partly upon hearsay, and partly upon vague inferences, but Cuthrell testified for defendants that he was employed by them as a "pumper" so we pass that. Plaintiff offered no evidence of the actual scope of Cuthrell's authority or employment, or his designated duties, but in lieu thereof introduced testimony of experienced oil men as to the usual and customary duties of a pumper.

The testimony of all the witnesses as to specific duties regularly performed by a pumper may be summarized as follows: he sees to the flow of oil from the pumps to a tank and gauges the tank; when full, he shuts off the flow or diverts it to another tank; he also gauges the amount pumped out of the tank by the purchasing pipe line company, signs a ticket for that amount as "operator's witness" and the pipe line company may (if he is properly accredited) accept

his figures and pay the operator for the stated quantity of oil. Also, it appears to be his duty to grease the pumps, and perhaps to do something if salt water flows.

Howard Bassett and E. F. Dillman were plaintiff's witnesses as to a pumper's duties. Both offered some vague generalities and conclusions, but neither testified to any other specific duties of a pumper, except as above stated. In fact, Dillman testified: "The job of pumper varies with different companies." If that is true, we do not perceive how the duties of a pumper for one company can be accepted as proof of another's duties for a different company.

Neither witness was asked, and neither stated whether it was normally the duty of a pumper to repair a pump, or whether he usually had a duty or authority to employ someone else to go upon the property to make a repair, or to remove the pump and have it repaired, or whether he was merely to report it to his employer or simply ignore it.

The gaps and omissions in plaintiff's evidence are filled in by Cuthrell, appearing as a witness for defendants, as follows: that he had nothing whatever to do with repairs; that in event of mechanical difficulties or defects, his only instruction was to report it to Mr. Hunter, one of the defendants. That Hunter had given him the name of a man in Mt. Vernon to notify, in case Hunter could not be reached personally; that the B. & B. Company normally did the repair work on pumps for this leasehold; that when the pump on this lease had stopped, he had made report thereof as instructed, and he had no instructions to do anything else. This statement as to his actual duty and authority stands uncontradicted and unimpeached.

We next consider what Cuthrell actually did. There is some claim by plaintiff that Cuthrell went to see Swanbeck to get some "pump cups" to put on the defective pump. There are a number of questions

propounded on this subject, with negative results. No competent evidence was introduced of any such mission by Cuthrell. He states that he went to see Swanbeck on personal matters, not on any business for the defendants, that the pump in question was already equipped with pump cups, and that he has no recollection of the subject being mentioned in his conversation with Swanbeck. Swanbeck was on the stand but said nothing on this subject.

The undisputed evidence of what actually happened was as follows: Cuthrell was a man of many jobs, of which his employment by defendants was only one (he calls it a sideline). He cleaned oil tanks and oiled roads, and for this purpose he had his own tank truck, which is the vehicle he was driving on the day of the accident. He did not use the truck in the business of defendants, but had driven it that day to go from his home to the pumps, because his passenger car was broken down. His work at the pumps had taken an hour or two around seven to eight in the morning. In the afternoon he was riding with his wife and child toward his home in Highland when he stopped off in St. Jacob to see the Swanbecks, whom he knew. His purpose in stopping was to ask Mr. Swanbeck for a job, and he did so. Before getting to the subject, there was some "shop talk" for Swanbeck was also an oil man, being foreman for another company. Cuthrell mentioned that he had a pump which refused to operate. Apparently Swanbeck suggested that one of his pumpers, Dillman, might know what was wrong. While they were talking, Dillman came on the scene, to report a leak in one of Swanbeck's pumps.

Dillman, a pumper with nineteen years experience, was an employee of Swanbeck, and as previously noted, testified for him in this case. It is of some interest that when Dillman had a defective pump, what he did, was to report it to his foreman Swanbeck,

who departed to take care of it while Dillman went home to supper.

Cuthrell told Dillman of his defective pump, and Dillman suggested that he ride out to the lease with Cuthrell, after supper, so he could look at it, to which Cuthrell agreed. Thereupon, Dillman told Cuthrell to come to his home after supper and pick him up. Dillman departed. Cuthrell and his wife continued to converse with Mrs. Swanbeck for a while, then Cuthrell got in his truck. He testified he *intended to go after Dillman.* Just as he started to drive away the accident occurred. Cuthrell did not actually take Dillman to the leasehold, though it is left to conjecture that he would have but for the accident.

■ ■ The evidence being undisputed, the facts must supply some basis for a jury to find the driver was acting in the scope of his employment, otherwise the court should have directed a verdict for the defendants. *Boehmer v. Norton,* 328 Ill. App. 17. Under the doctrine of *respondeat superior,* a master is liable for the negligent acts of his servant committed in the scope of his employment, but the doctrine does not apply unless the relation exists at the time and in respect to the particular transaction out of which the injury arose. *Union Bank of Chicago v. Kalkhurst,* 265 Ill. App. 254; *Shein v. John R. Thompson Co.,* 225 Ill. App. 490. An analysis of the rules pertaining to "scope of employment" is given in 35 Am. Jur. Master and Servant § 553, where it is pointed out the rule is easily stated but its application is sometimes doubtful. A similar analysis is set forth in the Restatement, Agency, § 229, etc.

■ The appellee seems to place his reliance upon the case of *Darner v. Colby,* 375 Ill. 558, wherein it is stated: "A master is liable for damages caused by the negligence of his agent or servant within the scope and in the course of his employment, although he

neither directs nor is aware of his acts.'' There is no doubt of the rule, but it requires that the servant be acting ''within the scope and in the course of his employment.'' In that case the employee was manager of an oil company's bulk plant, and at the time of an accident was engaged in hauling materials to the plant, which was part of his duty, but on this trip he had gone to Chicago Heights to get the load, which was not according to instructions. It was held the latter fact made no difference, because he was doing the type of work for his employer which he was supposed to do, even though he did it in an incorrect manner. The case has no application to the facts before us.

In this case, it appears that Cuthrell had discharged the duties of his employment when he reported the inactive pump; that he continued to be curious as to the reason for its failure; that for his own satisfaction he made inquiries of other oilmen; that there is nothing to indicate a purpose to employ assistance; that he had formed an intention to take an acquaintance with him to the pump; that he was not yet transporting anyone to the pump; that he was in his own vehicle, on his own errand, hours after his duties were completed and miles away from the place of his employment.

The plaintiff is entitled, upon motion for directed verdict for defendant, to all favorable inferences from the testimony. Here the only possible inference from the evidence seems to be that Cuthrell desired to be able to diagnose the trouble with the pump, and proceeded to make inquiries on his own initiative. Probably he would be more valuable as a pumper, if he could report the specific trouble with a pump, as well as the fact that it refused to operate. He might even learn of some simple adjustment which he could make himself without outside help. Therefore, while on an errand of his own, under no control

of his employer, and acting upon no instructions from anyone, he sought information and advice from other oilmen he happened to meet. This is as far as the inferences can conform to the facts. We suggest he might also have driven to a library to obtain a book on pumps, and could have had an accident while so engaged.

There is no precedent or principle which would hold a master liable for the negligence of the servant anywhere in the world, at any time, merely because the servant voluntarily was seeking to become more proficient in his employment.

On the contrary, it has been held that where a servant does something contrary to instructions, the fact that he believes it to be for the benefit of the master does not place the act within the scope of his employment. *Nelson v. Stutz Chicago Factory Branch,* 341 Ill. 387. And as stated in an earlier decision: "Even if the servant does the act because he thinks it will benefit the master, still if it is no part of the duty he was hired to perform, he is a mere volunteer and his act ought not to bind the master." *Chicago, R. I. & P. R. Co. v. Brackman,* 78 Ill. App. 141.

The case last cited also states the accepted rule of law that a plaintiff who makes a claim based upon negligence of an agent, has the burden of proof to show the agent's authority. This plaintiff has nothing to offer except that when Cuthrell drove away from Swanbeck's home, he intended to pick up Dillman and take him to "look at" the pump. It is not even shown that Cuthrell thought or had reason to believe that the trip would be of benefit to his employer. And if, by some reasoning, it be inferred that he did have such belief, the evidence establishes only that he was acting as a volunteer, with no control or instructions from any defendant.

There being a complete failure of proof that Cuthrell was acting in the scope and in the course of

his agency for defendants at the time of the accident, the trial court should have directed a verdict for defendants, or allowed the motion for judgment notwithstanding the verdict. Since the plaintiff has no case against these defendants, the judgment is reversed.

*Judgment reversed.*

CULBERTSON, P. J., and BARDENS, J., concur.