**John T. GUDGEL, Plaintiff-Appellant,**

v.

**SOUTHERN SHIPPERS, INC., Defendant-Appellee.**

**No. 16013.**

United States Court of Appeals
Seventh Circuit.

Oct. 26, 1967.

---

Mort A. Segall, Champaign, Ill., for appellant.

Charles R. Young, Graham, Meyer, Young, Welsch & Maton, Danville, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

HASTINGS, Chief Judge.

This case arises out of a collision between a car driven by plaintiff-appellant John Gudgel, a citizen of Indiana, and a truck tractor driven by defendant Bud Freischlag, a citizen of Illinios, at an intersection in Danville, Illinois, on June 30, 1963.

Defendants in addition to Freischlag are Southern Shippers, Inc., a Mississippi corporation and common carrier which had leased the tractor for a period of one year on November 8, 1962; Gene Moffett, an Illinois citizen whose name appears as owner-lessor on the lease agreement covering the tractor; Cecil Shockley, an Illinois citizen who had apparently purchased the tractor from

Moffett prior to the collision and regularly drove the tractor; and Wally Fondaw, a Mississippi citizen who is president of Southern Shippers.

Appellant's complaint alleges that Freischlag negligently ran a stop light, thereby causing the collision and injuring plaintiff in his person and property. The case was tried to a jury.

At the close of plaintiff's case the trial court granted motions dismissing defendants Moffett and Fondaw from the case and denied defendant Southern Shippers' motion to dismiss. Southern Shippers moved for a directed verdict at the close of defendants' case, and the court denied its motion. The jury returned a general verdict against defendants Freischlag and Southern Shippers.

In answer to special interrogatories, the jury found that Southern Shippers did not own the tractor involved in the collision, that Freischlag was in the employ of Southern Shippers on the date of the collision, and that Freischlag was acting within the scope of his employment as agent of Southern Shippers at the time of the collision.

Southern Shippers moved for judgment notwithstanding the verdict on various grounds, including the absence of evidence to support the finding that Southern Shippers was liable for Freischlag's negligence. The trial court granted the motion.

Plaintiff appeals from the trial court's order granting Southern Shippers' motion for judgment notwithstanding the verdict. The jury's finding that Freischlag was negligent and that his negligence proximately caused injury to plaintiff is therefore not at issue. The sole issue is whether the trial court erred in setting aside the jury's verdict against Southern Shippers.

■ This being a federal diversity negligence action, it is well settled that state substantive law must be applied. Here, it is the law of Illinois.

■■ It is equally well settled that federal law controls on the procedural question inherent in granting a motion for judgment notwithstanding the verdict. We have consistently followed the rule that such motions should be denied "where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." Zink v. Radewald, 7 Cir., 369 F.2d 253, 254 (1966); Valdes v. Karoll's, Inc., 7 Cir., 277 F.2d 637, 638 (1960); Smith v. J. C. Penney Co., 7 Cir., 261 F.2d 218, 219 (1958).

■ Under Illinois law, Southern Shippers' liability to plaintiff could be established on either of two bases. A master is liable for the torts of his agent committed while acting in the scope of his employment. Darner v. Colby, 375 Ill. 558, 31 N.E.2d 950 (1941); Hulke v. International Mfg. Co., 14 Ill.App.2d 5, 32–33, 142 N.E.2d 717 (1957); Laver v. Kingston, 11 Ill.App.2d 323, 137 N.E.2d 113 (1956). The relationship of master and servant exists if the master has the right to control the servant. Darner v. Colby, supra; Hartley v. Red Ball Transit Co., 344 Ill. 534, 538–539, 176 N.E. 751 (1931); Gundich v. Emerson Comstock Co., 21 Ill.2d 117, 123, 171 N.E.2d 60 (1960). Illinois follows the "loaned servant" doctrine, that one in the general employment of one person becomes the servant of another to whom he is transferred for the performance of a specific task, if control of the employee is wholly transferred to the latter. Yankey v. Oscar Bohlin & Sons, Inc., 37 Ill.App.2d 457, 463, 186 N.E.2d 57 (1962); Gundich v. Emerson Comstock Co., supra.

■ Even if Freischlag was employed by Shockley, the owner of the tractor, Southern Shippers might be liable. A common carrier operating under an Interstate Commerce Commission certificate is liable for the negligence of an independent contractor operating equipment leased to the carrier, if the contractor is operating by authority of the carrier's I.C.C. certificate and is carrying out the carrier's undertaking. Mellon

726

Nat'l Bank & Trust Co. v. Sophie Lines, Inc., 3 Cir., 289 F.2d 473 (1961); Venuto v. Robinson, 3 Cir., 118 F.2d 679 (1941), cert. den., C. A. Ross Agent, Inc. v. Venuto, 314 U.S. 627, 62 S.Ct. 58, 86 L.Ed. 504 (1941); Beers v. Indianapolis Forwarding Co., 43 Ill.App.2d 303, 193 N.E.2d 473 (1963); Louis v. Youngren, 12 Ill.App.2d 198, 138 N.E.2d 696 (1956). This is based on Restatement of the Law of Torts, § 428:

> "An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise, granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity."

In the instant case, it is undisputed that Freischlag was paid for his services by Shockley, not by Southern Shippers, and that Southern Shippers and Moffett, then the owner of the tractor, entered into a lease on November 8, 1962, which by its terms was in effect on the date of the collision. The lease is in evidence and provides that "the lessee shall have exclusive possession, control and use of the motor vehicle identified above for the duration of the lease." It is not disputed that Southern Shippers was a common carrier operating under an I.C.C. certificate.

Finally, the parties agreed that prior to the collision the Southern Shippers trailer towed by the tractor had been damaged when Shockley rammed an underpass in Chicago.

The precise issue in dispute is whether the evidence reasonably permits the conclusion that at the time of the collision Freischlag was engaged in the business of Southern Shippers. If he was not, Southern Shippers is not liable under either the doctrine of respondeat superior, Swanbeck v. Hubbard, 336 Ill.App. 384, 84 N.E.2d 159 (1949), or the public franchise rule, Kaplan Trucking Co. v. Lavine, 6 Cir., 253 F.2d 254 (1958).

Plaintiff's theory of the case is that at the time of the collision Freischlag was driving the tractor from Decatur, Illinois, to a grain elevator near Milford, Illinois, on instructions from Southern Shippers to pick up a trailer loaded with corn. Southern Shippers' view of the case is that Freischlag was not its employee, that the lease of the tractor was canceled by Southern Shippers on June 28, 1963, two days prior to the collision, and that no instructions were given Shockley or Freischlag to operate the tractor after June 28.

■ Considering all of the evidence, we do not believe the jury could reasonably conclude that Freischlag was undertaking the business of Southern Shippers at the time of the collision.

The relevant evidence tending to support plaintiff's position consists of the lease and the testimony of Freischlag and Michael Collins, a passenger in the tractor at the time of the collision.

Freischlag testified that he was driving the tractor to Hoopeston, Illinois, to pick up a Southern Shippers trailer and take it to a grain elevator north of Hoopeston to be loaded with corn. This was done, according to Freischlag, on instructions he and Shockley, the owner of the tractor, received by telephone from John Tudor, then secretary-treasurer of Southern Shippers, on June 29.

Collins corroborated Freischlag as to the destination and purpose of the trip, but testified that the corn was to be transported for Shockley. He made no mention of ownership of the trailer.

Evidence tending to show Southern Shippers' knowledge that Freischlag drove the tractor, and uncontested evidence of Southern Shippers' control and use of the tractor prior to June 28, 1963, relates to a period prior to the collision and supports only a slight inference that the tractor was being operated at Southern Shippers' direction and in furtherance of its business when the collision occurred. The lease, which gave Southern Shippers the right to control the tractor, supports a weak inference that

the tractor was being operated under its control and in its business when the collision occurred.

The evidence in support of Southern Shippers' position is overwhelming. The president of Southern Shippers, Wally Fondaw, testified that he did not know Freischlag, that he canceled the lease on June 28, 1963, because Shockley had torn the top out of the company's trailer by hitting an underpass, that the trailer was damaged so badly that it was not suitable for transporting anything, and that no instructions were given to Freischlag or Shockley to do anything after they left the damaged trailer at the Bryce Farmers Grain Elevator in Milford on June 28, 1963. Lee Lautenschllager, the manager of the Bryce Farmers Grain Elevator at Milford, Illinois, testified that at Fondaw's request, a trailer with the roof "mashed" was parked at the elevator on or about June 28, 1963, and that it was incapable of transporting grain.

*Plaintiff* introduced into evidence the daily log for the tractor for June 30, 1963, the day of the collision. The log was required to be made under I.C.C. regulations. It was signed by Shockley, and indicated that on June 30 the tractor was "off duty" at Decatur, Illinios.

The lease, which was also introduced by plaintiff, bears the notation "cancelled 6–28–63" and "cancelled June 28, 1963" across its pages.

When the evidence is so overwhelmingly on one side that the jury could not *reasonably* reach conflicting conclusions, a directed verdict or judgment notwithstanding the verdict is proper. O'Connor v. Pennsylvania R.R., 2 Cir., 308 F.2d 911 (1962); State of Washington v. United States, 9 Cir., 214 F.2d 33 (1954), cert. den., 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679 (1954).

We conclude that the district court did not err in granting the challenged judgment notwithstanding the verdict. The judgment appealed from is affirmed.

Affirmed.